**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

DR. COLIN WRIGHT,

*Plaintiff,*

v.

CORNELL UNIVERSITY,

*Defendant.*

Case No. 3:26-cv-127-GTS-ML

**DEFENDANT CORNELL UNIVERSITY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

# TABLE OF CONTENTS


**Page**

INTRODUCTION ..... 1

FACTUAL BACKGROUND ..... 2

LEGAL STANDARD ..... 3

ARGUMENT ..... 5

I. WRIGHT LACKS STANDING. ..... 5

A. Wright lacks standing because he left the academic job market before the hiring process he challenges began. ..... 5

B. Wright fails even to allege an impending injury that justifies injunctive relief. ..... 7

II. WRIGHT'S TITLE VII CLAIMS (COUNTS 1 AND 2) ARE TIME BARRED. ..... 9

III. WRIGHT'S NYSHRL CLAIMS (COUNTS 3, 4, AND 5) ARE TIME-BARRED. ..... 12

CONCLUSION ..... 16

CERTIFICATE OF SERVICE ..... 17

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Alliance for Env'tal Renewal, Inc. v. Pyramid Crossgates Co.*,
436 F.3d 82 (2d Cir. 2006)....................4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................4

*Banks v. Gen. Motors, LLC*,
81 F.4th 242 (2d Cir. 2023)....................13

*Bawa v. Brookhaven Nat. Laboratory, Assoc. Univs., Inc.*,
968 F. Supp. 865 (E.D.N.Y. 1997)....................15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................4

*Bleichert v. N.Y. State Educ. Dept.*,
793 F. App'x 32 (2d Cir. 2019)....................14

*Borden v. City of New York*,
2025 WL 754147 (E.D.N.Y. Mar. 10, 2025)....................14

*Burgis v. N.Y. City Dept. of Sanitation*,
798 F.3d 63 (2d Cir. 2015)....................9

*Carney v. Adams*,
592 U.S. 53 (2020)....................5, 7

*Carter v. Scripps Networks, LLC*,
slip op., 2023 WL 3061858 (S.D.N.Y. Apr. 24, 2023)....................3

*Castagna v. Lucena*,
744 F.3d 254 (2nd Cir. 2014)....................14

*Catone v. Clark Brink*,
488 F. Supp. 2d 214 (N.D.N.Y. 2007)....................11

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)....................8

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)....................8

*Dakus v. Koninklijke Luchtvaart Maatschappij, N.V.*,
2023 WL 5935694 (S.D.N.Y. Sept. 12, 2023)....................7

*Davis v. FEC*,
554 U.S. 724 (2008)....................5

*Do No Harm v. Pfizer Inc.*,
126 F.4th 109, 118 (2d Cir. 2025) ....................5, 7

*Donahue v. Metropolitan Life Ins. Co.*,
2025 WL 1194738 (S.D.N.Y. Mar. 5, 2025) ....................14

*Duhaney v. Kinexion, Inc.*,
--- F. Supp. 3d ---, 2026 WL 252026 (E.D.N.Y. Jan. 30 2026)....................11

*EEOC v. Bloomberg L.P.*,
751 F. Supp. 2d 628, 644 (S.D.N.Y. 2010) ....................9

*EEOC v. Rotary Corp.*,
164 F. Supp. 2d 306 (N.D.N.Y. 2001)....................15

*Ekpe v. City of New York*,
2024 WL 1621207 (S.D.N.Y. April 12, 2024) ....................10

*Flaherty v. Massapequa Pub. Sch.*,
752 F. Supp. 2d 286 (E.D.N.Y. 2010) ....................12

*Francis v. Blaikie Group*,
372 F. Supp. 2d 741 (S.D.N.Y. 2005)....................9

*Frederick v. JetBlue Airways Corp.*,
671 F. App'x 831 (2d Cir. 2016) ....................12

*Gilani v. Nat'l Ass'n of Sec. Dealers, Inc.*,
1997 WL 473383 (S.D.N.Y. Aug. 19, 1997) (Sotomayor, J.) ....................13

*Goel v. Bunge, Ltd.*,
820 F.3d 554 (2d Cir. 2016)....................4

*Goodman v. Bouzy*,
2023 WL 3296203 (S.D.N.Y. May 8, 2023) ....................3

*Haghpassand v. Reuters Am. Inc.*,
120 F. App'x 859 (2d Cir. 2005) ....................10

*Hollingsworth v. Theatrical Teamsters Union Local 817 IBT*,
2020 WL 2219212 (E.D.N.Y. May 7, 2020) ....................11

*Huss v. Ricci Oil Co., Inc.*,
68 N.Y.S.3d 298 (N.Y. App. Div., 2d Dep't 2017) ....................13

*Johnson v. Ry. Express Agency, Inc.*,
421 U.S. 454 (1975)....................14, 15

*Katz v. Donna Karan Co.*,
872 F.3d 114 (2d Cir. 2017)....................3

*Kemp v. Regeneron Pharm., Inc.*,
117 F.4th 63 (2d Cir. 2024) ....................12

*Krause v. Kelehan*,
2018 WL 2021484 (N.D.N.Y. Apr. 26, 2018)....................15

*Menominee Indian Tribe of Wisconsin v. U.S.*,
577 U.S. 250 (2016)....................12

*Mudholkar v. Univ. of Rochester*,
261 F. App'x 320 (2d Cir. 2008) ....................9, 10

*Murthy v. Missouri*,
603 U.S. 43 (2024)....................8

*Nat'l R.R. Passenger Corp. v. Morgan*,
536 U.S. 101 (2002)....................9

*NRA of Am. v. Cuomo*,
480 F. Supp. 3d 404 (N.D.N.Y. 2020)....................3

*Oliver v. N.Y. Tel. Co.*,
1993 WL 173471 (W.D.N.Y. Mar. 31, 1993)....................15

*Osorio v. Source Enters., Inc.*,
2006 WL 2548425 (S.D.N.Y. Sept. 5, 2006)....................13

*Putter v. North Shore Univ. Hosp.*,
7 N.Y.3d 548 (N.Y. 2006) ....................13

*Rasko v. N.Y. City Admin. for Children's Servs.*,
734 F. App'x 52 (2d Cir. 2018) ....................9

*Schwartz v. Middletown City Sch. Dist.*,
2024 WL 1257095 (S.D.N.Y. Mar. 25, 2024) ....................14

*Shojae v. Harlem Hosp. Ctr., N.Y.C. Health & Hosps. Corp.*,
764 F. App'x 113 (2d Cir. 2019) ....................13

*Siegel v. HSBC N. Am. Holdings, Inc.*,
933 F.3d 217 (2d Cir. 2019)....................4

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)....................5

*Staten v. City of New York*,
653 F. App'x 78 (2d Cir. 2016) ....................10

*Summers v. Earth Island Institute*,
555 U.S. 488 (2009)....................8, 9

*Town of Chester v. Laroe Estates, Inc.*,
581 U.S. 433 (2017)....................5

*United States v. Sealed Defendant One*,
49 F.4th 690 (2d Cir. 2022) ....................13

*Valencia Ag, LLC v. Reid*,
2025 WL 904512 (N.D.N.Y. Mar. 25, 2025) (Suddaby, J.) ....................7

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
127 F. Supp. 3d 156 (S.D.N.Y. 2015)....................3

*York v. Ass'n of the Bar of the City of N.Y.*,
286 F.3d 122 (2d Cir. 2002)....................15

*Zablauskas v. Dep't of Educ.*,
2025 WL 2653001 (S.D.N.Y. Sept. 16, 2025)....................11

*Zerilli—Edelglass v. N.Y.C. Transit Auth.*,
333 F.3d 74 (2d Cir. 2003)....................10

**STATUTES**

42 U.S.C. § 2000e–5 ....................................................................................................9

N.Y. Exec. Law § 297(9) ..........................................................................................14, 15

N.Y. Exec. Law § 296....................................................................................................2

Title VII ....................................................................................................... passim

**RULES**

CPLR § 204(a) ............................................................................................14, 16

Fed. R. Evid. 201 ..........................................................................................................3

Rule 12 of the Federal Rules of Civil Procedure ..................................................1, 2, 3, 4

**REGULATIONS**

29 C.F.R. § 1601.80 ......................................................................................................9

**OTHER AUTHORITIES**

https://ecologyandevolution.cornell.edu/faculty.......................................................................3

*Welcome new faculty, Swanne Gordon and Andrés López-Sepulcre, Cornell University Department of Ecology & Evolutionary Biology* (Oct. 3, 2022), https:// ecologyandevolution.cornell.edu/news/welcome-new-faculty-swanne-gordon-and-andres-lopez-sepulcre.......................................................................3

## INTRODUCTION

Each of Plaintiff Colin Wright's five causes of action turns on his contention that Defendant Cornell University ("Cornell") wrongfully denied him a faculty position through a hiring process that began in December 2020 and concluded in October 2022. But his social-media posts and publications tell a different story: he abandoned any effort to obtain a faculty position in April 2020, long before the relevant hiring process began. Because he cannot show that he was ready and able to apply, he cannot establish Article III standing. His claims must therefore be dismissed for lack of jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("FRCP").

Wright's complaint should also be dismissed as untimely pursuant to Rule 12(b)(6) of the FRCP. Wright's claims arise under Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York State Human Rights Law ("NYSHRL"). Wright's Title VII claims are time-barred because he filed his charge on July 28, 2025, years after the expiration of Title VII's 300-day deadline for filing an EEOC charge about the 2020–22 hiring decision. Wright's NYSHRL claims are time-barred because he did not file his lawsuit until January 26, 2026—after the expiration of the three-year deadline for filing NYSHRL claims. Wright cannot salvage his untimely claims by invoking the "rare and exceptional" doctrine of equitable tolling, because (1) he did not exercise diligence in pursuing his claims and (2) he cannot show that extraordinary circumstances caused his delay.

For these and other reasons set forth below, Cornell respectfully asks that Colin Wright's Complaint be dismissed in its entirety.

## FACTUAL BACKGROUND

Wright's Complaint contains five causes of action, all of which turn on Wright's allegation that he was harmed by a hiring decision Cornell made between December 2020 and October 2022. *See* Doc. 1 (Complaint ("Compl.")) ¶¶ 106, 64. Specifically, Counts One (Title VII § 703(a)(2)), Two (Title VII § 703(a)(1)), and Four (N.Y. Exec. Law § 296(1)(a)) allege Cornell failed to hire Wright based on race; Count Three (N.Y. Exec. Law § 296(1)(d)) alleges Cornell used discriminatory application forms; and Count Five (N.Y. Exec. Law § 296(13)) alleges Wright was blacklisted from the position based on race.

For purposes of Cornell's Rule 12(b)(1) motion to dismiss, Cornell relies on various social media posts and articles by Wright, which establish that he abandoned his search for academic jobs in April 2020, several months before Cornell commenced the challenged hiring process. *See* discussion *infra* Section I.A.

For purposes of Cornell's 12(b)(6) motion on timeliness grounds, Cornell accepts as true the following allegations in the Complaint: Between December 2020 and October 2022, Cornell's Department of Ecology and Evolutionary Biology (the "EEB Department") engaged in a search process that resulted in the hiring of a tenure track faculty member. *See* Doc. 1 (Complaint ("Compl.")) ¶¶ 5–7, 28, 41, 43, 45, 50, 56–57, 61, 106). Wright learned about the hiring decision on June 26, 2025 when he read an X post by Christopher Rufo on the topic. Compl. ¶¶ 64, 84. The Complaint alleges <u>no</u> effort by Wright to pursue his claims prior to reading this June 2025 post. In fact, the Complaint alleges no action by Wright of any kind between 2021 and June 2025.

The Complaint alleges that Cornell did not advertise this position (Compl. ¶ 38), but does not allege that the hiring decision was concealed. To the contrary, the Complaint incorporates by reference the faculty page for Cornell's EEB department, which contains photos, names, and titles for EEB's "roughly 30 faculty members," including the faculty member who was hired in 2022.

*See* Compl. ¶ 24 n.1 (https://ecologyandevolution.cornell.edu/faculty).[1] Clicking on that faculty member's name provides access to an article showing that the hiring decision was announced on October 3, 2022. *See Welcome new faculty, Swanne Gordon and Andrés López-Sepulcre, Cornell University Department of Ecology & Evolutionary Biology*, (Oct. 3, 2022), https://ecologyandevolution.cornell.edu/news/welcome-new-faculty-swanne-gordon-and-andres-lopez-sepulcre.[2]

Although the hiring decision was announced in October 2022, Wright did not file a charge of discrimination with the Equal Employment Opportunity Commission until July 28, 2025. *Id.* ¶ 85. He did not file this lawsuit until January 26, 2026.

## LEGAL STANDARD

A motion under Rule 12(b)(1) can be either facial or fact-based. *Katz v. Donna Karan Co.*, 872 F.3d 114, 119 (2d Cir. 2017). A facial challenge, like a Rule 12(b)(6) motion, accepts the complaint's allegations, so the plaintiff has no further evidentiary burden. *Id*. However, a defendant may also "make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the

[1] When a complaint includes a hyperlink, courts have found that the linked item is incorporated by reference and therefore appropriate for consideration at the motion to dismiss stage. *See, e.g.*, *Goodman v. Bouzy*, 2023 WL 3296203, at *2 (S.D.N.Y. May 8, 2023), *report and recommendation adopted*, 2023 WL 4235851 (S.D.N.Y. June 28, 2023) (applying incorporation by reference doctrine and the integral document doctrine, finding that the hyperlinked recording met both standards).

[2] Under the Federal Rules of Evidence, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because" the fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also* Fed. R. Evid. 201(d) ("The court may take judicial notice at any stage of the proceeding."). Courts in this district have applied Rule 201(b) to parties' official websites at the motion to dismiss stage. *See, e.g.*, *NRA of Am. v. Cuomo*, 480 F. Supp. 3d 404, 417 n.2 (N.D.N.Y. 2020) (taking "judicial notice of the documents and screenshots Defendant submitted from Plaintiff's website"); *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015) (taking judicial notice of "printouts from entities' websites"); *Carter v. Scripps Networks, LLC*, slip op., 2023 WL 3061858, *5 (S.D.N.Y. Apr. 24, 2023) (similar).

Pleading." *Id.* (citations omitted). A plaintiff faced with a factual standing challenge that contradicts the complaint's allegations with evidence must "come forward with evidence of [his] own" to prove standing by a preponderance of the evidence. *Id.* at 119–20 (citations omitted). A district court resolving a factual standing challenge "has leeway as to the procedure it wishes to follow," including authorizing "limited discovery on the jurisdictional issue" and "conduct[ing] a hearing" if necessary to resolve the standing issue. *Alliance for Env'tal Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 (2d Cir. 2006).

In deciding a motion to dismiss, a court may consider facts stated on the face of the complaint, and the following: (1) documents attached to the complaint; (2) documents incorporated by reference in the complaint; (3) documents that are "integral" to the complaint; and (4) any matter of which a court can take judicial notice. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). A motion to dismiss under Rule 12(b)(6) should be granted if the complaint fails to allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Although a court must accept all well-pleaded facts alleged in the complaint as true and "draw[ ] all reasonable inferences in the plaintiffs' favor," a court is "not . . . bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217, 222 (2d Cir. 2019) (citations omitted). This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

# ARGUMENT

## I. WRIGHT LACKS STANDING.

This is a lawsuit in search of a plaintiff, and Wright does not fit the bill. Article III requires Wright to demonstrate that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 438 (2017) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). "[S]tanding is not dispensed in gross," so Wright must make that showing "for each claim he seeks to press and for each form of relief sought." *Id.* at 439 (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)). He fails to do so.

Wright's public statements squarely contradict his allegations that Cornell's hiring process injured him. His suit depends on the pretense that he would have been ready and able to apply for the EEB position at the end of 2020 had Cornell just posted it. But he made clear—in an "OFFICIAL ANNOUNCEMENT" no less—that he left the academic job market in April 2020, eight months before the hiring process he challenges began. Butler Decl. Exhibit B, April 6, 2020 tweet. So that process did him no harm.

In addition to that factual failing, Wright does not allege an impending future injury and thus cannot justify injunctive relief.

### A. Wright lacks standing because he left the academic job market before the hiring process he challenges began.

A plaintiff seeking to challenge an allegedly discriminatory hiring process must at least show that he was "able and ready to apply." *Do No Harm v. Pfizer Inc.*, 126 F.4th 109, 118 (2d Cir. 2025). That requires more than "a bare statement of intent"—a plaintiff must show a "concrete" desire for the job. *Carney v. Adams*, 592 U.S. 53, 64–65 (2020). To satisfy that requirement, Wright alleges that he was "searching for jobs in 2020–2021." Compl. ¶ 67; *see also*

*id.* ¶¶ 83, 119, 138 (similar). But he gave up on academia in April 2020, eight months before the hiring process he challenges began. He therefore lacks standing.

On April 5, 2020, Wright tweeted to a user that he was "[l]eaving academia[] 😃" and confirmed that his decision was "official." Butler Decl. Exhibit A, April 5, 2020 tweet; *see also* Compl. ¶ 84 n.11 (citing Wright's X.com profile). The next morning he told all his followers, "OFFICIAL ANNOUNCEMENT: I have left academia." Butler Decl. Ex. B, April 6, 2020 tweet. He explained the decision across a 16-part thread, telling followers that his pursuit of "a faculty job in academia" had "been unsuccessful," so after "contemplating [his] chances of obtaining a faculty position in the next several years," he "decided that [his] energy would be best spent elsewhere." *Id.* It was a carefully considered decision. Wright weighed "the fact that COVID-19 is going to dramatically decrease funding and hiring in academia for the foreseeable future," among other factors, to conclude that his "chances of securing a faculty position before [he is] 40 approaches zero." *Id.* So he decided that he would "be pursuing other career paths . . . instead of relinquishing control to the whims of hiring and tenure committees." *Id.* He confirmed that he had "decided to turn his back on academia" in an article about his decision to end his academic job search. Butler Decl. Ex. J, Daily Caller Article.

A week after the official announcement, Wright reaffirmed his conclusion that it was not worth continuing to seek an academic job because "cues and signals" he received indicated that it would be "very difficult" for him "to *ever* land a job in academia." Butler Decl. Exhibit C, April 13, 2020 tweet. And again in July 2020: "To be clear, I wasn't forced out of academia. I left voluntarily[.]" *Id.* Exhibit D, July 31, 2020, tweet; *see also id.* Exhibit E, August 1, 2020 tweet ("I chose to leave academia because I believe . . . pursuing a tenure track job would have been a waste of time.").

In the days and months that followed Wright's early April 2020 departure from academia, Wright often expressed relief at no longer being in the academic rat race. *See, e.g.*, *id.* Exhibit F, April 15, 2020 tweet ("Fortunately I've now left academia[.]"); *id.* Exhibit G, August 16, 2020 tweet ("I'm very happy to have left academia."); *id.* ("I got out right in time."); *id.* Exhibit H, June 16, 2021 tweet ("I'm so glad I left academia last year.") *id.* Exhibit I, November 2, 2021 tweet ("I am so glad I got out of academia when I did[.]"). And he gave no indication that despite being very happy that he left academia, he was secretly still in the hunt for a tenure-track job. Instead, on July 30, 2025, he acknowledged again, in a *Wall Street Journal* piece about the EEOC charge that preceded this lawsuit, that he had "left academia in 2020." *Id.* Exhibit K, Wall Street Journal Article.

That history squarely "contradicts [Wright's] factual allegations that" he sought academic employment through 2021. *Valencia Ag, LLC v. Reid*, 2025 WL 904512, at *5 (N.D.N.Y. Mar. 25, 2025) (Suddaby, J.). In reality, Wright stopped seeking academic jobs long before the December 23, 2020, email about hiring a new professor at Cornell. Compl. ¶¶ 5, 7. Wright was not "able and ready" to apply for a position in an industry he had very publicly left behind eight months earlier. *Carney*, 592 U.S. at 60; *Do No Harm*, 126 F.4th at 118; *see also Dakus v. Koninklijke Luchtvaart Maatschappij, N.V.*, 2023 WL 5935694, at *4 (S.D.N.Y. Sept. 12, 2023) ("Plaintiff's theory of constitutional standing falls apart once the Court considers Defendant's factual challenge to the allegations which form the basis of Plaintiff's alleged injury."). So he never suffered any injury. His claims should be dismissed for lack of standing.

**B. Wright fails even to allege an impending injury that justifies injunctive relief.**

Setting aside his factual standing problem, Wright's lack of standing to seek injunctive relief is apparent from the face of the complaint. He requests a two-part injunction: (1) a prohibition on comparing, interviewing, and hiring job applicants based on race, Compl. Prayer

for Relief ¶ B; and (2) a requirement that Cornell "take down from its website, and . . . remove from its policies and procedures, any and all language which violates federal and New York state discrimination laws," *id.* ¶ C. To seek that relief, Wright must face an "actual and imminent" threat of injury that the injunction would "prevent or redress." *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009). Neither "allegations of possible future injury," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013), nor "[p]ast exposure to illegal conduct" qualify, *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Instead, Wright must plausibly allege "a real and immediate threat of repeated injury." *Murthy v. Missouri*, 603 U.S. 43, 58 (2024). He comes nowhere near that standard.

With respect to the first request, the Complaint makes no allegation that Cornell has ever followed a similar hiring process since 2020, let alone that it will do so in the near future. And even if there were some chance of a similar process, Wright admits that "the damage to [his] career is done" and repeatedly describes his job search as ending years before he filed his Complaint, in 2020 according to his social media statements and in 2021 according to the Complaint. *See* Butler Decl. Exs. A, B, C, H; Compl. ¶¶ 83, 89, 119, 138. That admission acknowledges what the evidence discussed above shows, *supra* at I.A.—Dr. Wright is not in the market for a job at Cornell and therefore would not be injured by any future hiring process.

The allegations to support his second request are equally nonexistent. Wright does not allege that Cornell has ever had "language [that] violates federal and New York state discrimination laws" on its website or in its policies, let alone that it currently has that language. Compl. Prayer for Relief ¶ C. Nor does he provide any reason to think that the mere existence of words on Cornell's website or in its policies threatens someone who has no connection to the

university with "actual and imminent" injury "that is concrete and particularized." *Summers*, 555 U.S. at 493.

Wright's failure to allege any threat of prospective harm provides an additional reason to dismiss his claims for injunctive relief.

## II. WRIGHT'S TITLE VII CLAIMS (COUNTS 1 AND 2) ARE TIME BARRED.

As a precondition to filing a Title VII claim in federal court, a plaintiff must first exhaust administrative remedies by filing a timely charge of discrimination with the EEOC. 42 U.S.C. § 2000e-5(e); *see Burgis v. N.Y. City Dept. of Sanitation*, 798 F.3d 63, 71 (2d Cir. 2015). "Discriminatory incidents not timely charged before the EEOC will be time barred upon the plaintiff's suit in district court." *Francis v. Blaikie Group*, 372 F. Supp. 2d 741, 746 (S.D.N.Y. 2005) (dismissing plaintiff's Title VII claim as time barred) (citations omitted); *Mudholkar v. Univ. of Rochester*, 261 F. App'x 320, 323 (2d Cir. 2008).

"The requirement . . . that the charge be filed 'after' the practice 'occurred' tells [the Court] that a litigant has up to 180 or 300 days after the unlawful practice happened to file a charge with the EEOC." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109–110 (2002) (quoting 42 U.S.C. § 2000e–5(e)(1)). In deferral states like New York, the deadline for filing an EEOC charge is "three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); 29 C.F.R. § 1601.80; *Rasko v. N.Y. City Admin. for Children's Servs.*, 734 F. App'x 52, 53–54 (2d Cir. 2018) ("Under Title VII, a plaintiff in New York must file a complaint with the EEOC within 300 days of a discriminatory act."). "Claims concerning discrete acts outside this window will be time-barred." *Rasko*, 734 F. App'x at 54. "[S]o the 300–day filing period is the relevant time period in this case." *EEOC v. Bloomberg L.P.*, 751 F. Supp. 2d 628, 644 (S.D.N.Y. 2010), *decision clarified on reconsideration* (Dec. 2, 2010).

Wright filed his charge on July 28, 2025. Compl. ¶ 85. Thus, allegations of discrete acts that predate October 1, 2024 (which is 300 days before July 28, 2025) are time-barred. Because the Complaint challenges a discrete hiring decision that occurred prior to October 1, 2024, it should be dismissed as time-barred. *See* Compl. ¶¶ 106, 116, 127, 129, 148. *See Ekpe v. City of New York*, 2024 WL 1621207, *5 (S.D.N.Y. April 12, 2024) (dismissing Title VII claims occurring 300 days prior to filing EEOC charge as time barred); *Staten v. City of New York*, 653 F. App'x 78, 79–80 (2d Cir. 2016) (affirming dismissal of Title VII claims as time-barred); *Mudholkar v. Univ. of Rochester*, 261 F. App'x 320, 323 (2d Cir. 2008) (similar).

In an apparent attempt to excuse his untimely claims by invoking equitable tolling, the Complaint alleges that Cornell "concealed" the fact that it was hiring a new faculty member and that Wright "had no idea either that the position had been open or that it had been filled" until June 2025, when he read the Christopher Rufo post. Compl. ¶¶ 64, 84. These allegations fall far short of satisfying the requirements for tolling.

The Second Circuit has made clear that "equitable tolling is only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights." *Zerilli—Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (citations omitted). "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period []he seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *See id.* at 80–81 (citations omitted).

***First***, Wright cannot demonstrate that he "pursue[d] his claims diligently[.]" *Haghpassand v. Reuters Am. Inc.*, 120 F. App'x 859, 862 (2d Cir. 2005). His Complaint does not allege a single

action that he took between the alleged discriminatory hiring decision in 2022 and the date he read the Christopher Rufo post in June 2025. Compl. ¶ 84. Indeed, the Complaint does not allege that Wright did anything at all after 2021 and before June 2025. Courts have consistently held that such inaction forecloses a finding of diligence. *See, e.g.*, *Duhaney v. Kinexion, Inc.*, --- F. Supp. 3d ---, 2026 WL 252026, at *4 (E.D.N.Y. Jan. 30 2026); *Zablauskas v. Dep't of Educ.*, 2025 WL 2653001, at *4 (S.D.N.Y. Sept. 16, 2025) (collecting cases); *Catone v. Clark Brink*, 488 F. Supp. 2d 214, 218 (N.D.N.Y. 2007); *Hollingsworth v. Theatrical Teamsters Union Local 817 IBT*, 2020 WL 2219212, at *4 (E.D.N.Y. May 7, 2020).

In *Villarreal v. R.J. Reynolds Tobacco Co.*, for example, the *en banc* Eleventh Circuit, applied the test adopted by the Second Circuit in *Zerilli*, and rejected equitable tolling because a job applicant did nothing for more than two years between applying for a job and learning from an attorney that he had been discriminated against. 839 F.3d 958, 971–72 (11th Cir. 2016). Villareal's admission that he learned about the alleged discrimination from a third party (the attorney), and "not by his own diligence," warranted dismissal on the pleadings. *Id*. at 972. The same defects apply with equal force to Wright's pleading. Wright's Complaint, like the complaint in *Villareal*, makes clear that Wright exercised no diligence to uncover his claim; rather, he learned of the alleged discrimination from a third party, Christopher Rufo. His failure to point to a single act of diligence on his own part between the 2022 hiring decision and Rufo's June 2025 social media posts is fatal to his claim. The court in *Villarreal* concluded that "a plaintiff who does nothing for two years is not diligent." *Id*. Wright's Complaint alleges that he did nothing for approximately four years, from 2021 to 2025. Wright cannot establish diligence for equitable tolling purposes.

Indeed, Wright's deficiencies are even more egregious than those present in other cases where courts rejected equitable tolling. For instance, in *Amini v. Oberlin College*, the court rejected equitable tolling even though an applicant for a university teaching position periodically checked the employer's website to determine whether anyone had been hired for the position. 259 F.3d 493, 501 (6th Cir. 2001). Here, Wright alleges no diligence on his part to uncover the hiring decision; he did not search Cornell's website and, in fact, stopped looking for academic jobs altogether months before Cornell filled the position and publicly announced its hiring decision. Compl. ¶ 138.

***Second***, Wright cannot show extraordinary circumstances that caused him to miss the original filing deadline. *See, e.g.*, *Frederick v. JetBlue Airways Corp.*, 671 F. App'x 831, 832 (2d Cir. 2016) (quoting *Menominee Indian Tribe of Wisconsin v. U.S.*, 577 U.S. 250, 257 (2016)). Wright's Complaint references EEB's faculty page, which confirms that hiring decision was broadly and publicly announced on October 3, 2022. *See* p. 3 *supra*. Wright missed his filing deadline not because Cornell engaged in concealment, but because he chose to abandon his search for academic jobs, made no effort to pursue his claim, and failed to conduct a simple website search that would have revealed the hiring decision.

## III. WRIGHT'S NYSHRL CLAIMS (COUNTS 3, 4, AND 5) ARE TIME-BARRED.

Claims under the NYSHRL are governed by a three-year statute of limitations. *See* New York Civil Practice Law and Rules ("CPLR") § 214(2) ("The following actions must be commenced within three years . . . an action to recover upon a liability, penalty or forfeiture created or imposed by statute."); *Kemp v. Regeneron Pharm., Inc.*, 117 F.4th 63 (2d Cir. 2024). A NYSHRL discrimination claim generally "accrues and the limitation period begins to run on the date of the alleged discriminatory act." *Flaherty v. Massapequa Pub. Sch.*, 752 F. Supp. 2d 286, 293 (E.D.N.Y. 2010). Wright filed with this Court on January 26, 2026, which means that discrete

acts that predate January 26, 2023 are time-barred. Thus, his claims, which are based on a discrete hiring decision that was made by 2022 at the latest, must be dismissed.

Wright cannot rely on equitable principles to revive his claim. When considering whether to toll the statute of limitations for equitable reasons, New York applies similar standards as exist under federal law. *See Huss v. Ricci Oil Co., Inc.*, 68 N.Y.S.3d 298, 301–02 (N.Y. App. Div., 2d Dep't 2017) (holding that "defendant's motion to dismiss the complaint as time-barred should have been granted" because the "plaintiff did not demonstrate the necessary due diligence"); *Putter v. North Shore Univ. Hosp.*, 7 N.Y.3d 548, 552–53 (N.Y. 2006). For reasons discussed above, Wright cannot meet this standard.

Nor can Wright rely on the filing of his EEOC charge to salvage his untimely claims. As other courts have correctly observed, an EEOC charge does not toll the time for filing a NYSHRL claim. *Osorio v. Source Enters., Inc.*, 2006 WL 2548425, at *3 (S.D.N.Y. Sept. 5, 2006) ("[A]n EEOC charge does not toll the time for state law claims arising from the same events[.]"); *Gilani v. Nat'l Ass'n of Sec. Dealers, Inc.*, 1997 WL 473383, at *5 (S.D.N.Y. Aug. 19, 1997) (Sotomayor, J.) ("Filing an EEOC charge does not toll a New York Human Rights claim.").[3] These decisions

[3]The Second Circuit has declined to resolve "whether the statute of limitations under the NYSHRL and NYCHRL is tolled while a complaint is pending with the Equal Employment Opportunity Commission." *Shojae v. Harlem Hosp. Ctr., N.Y.C. Health & Hosps. Corp.*, 764 F. App'x 113, 114 n.2 (2d Cir. 2019). In a more recent opinion, it did say that the NYSHRL's statute of limitations is tolled while an EEOC charge is pending. *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 260 (2d Cir. 2023). But that statement is dicta, because the at-issue claims would have been timely under the NYSHRL even without tolling. Specifically, the court noted that with the benefit of approximately 10 months of tolling, the applicable limitations period began on January 20, 2011, which means that even without tolling, the at-issue disparate treatment claims, which arose in 2013 and 2014, would have been timely. *See id.*; *see also United States v. Sealed Defendant One*, 49 F.4th 690, 699 n. 4 (2d Cir. 2022) ("[O]nly holdings – what is necessary to a decision – are binding" (cleaned up)). Some subsequent district court cases applying *Banks* continue to recognize that "[t]he Second Circuit has not decided whether the statute of limitations under the NYSHRL and NYCHRL is tolled while a complaint is pending with the EEOC." *Borden v. City*

are consistent with well-settled precedent that an EEOC charge, although a prerequisite for filing a Title VII claim, does not toll the time for filing other federal and state law claims. *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454 (1975). As the Supreme Court noted in *Johnson*, because the EEOC charge-filing requirement does not prevent an individual from "pursu[ing] independently his rights under . . . other applicable state and federal statutes," there is no reason for an individual to delay filing other causes of action—and no basis for tolling—while the EEOC charge is pending. *Id.* at 459. The Second Circuit adopted this same reasoning in holding under federal law that the filing of an EEOC charge does not toll the statute of limitations for New York common law claims. *Castagna v. Lucena*, 744 F.3d 254, 255 (2nd Cir. 2014).

Much of the case law finding otherwise stems from an incorrect reliance on *Pan American World Airways, Inc. v. N.Y. State Human Rights Appeal Board*, a New York Court of Appeals ruling that addresses tolling of NYSHRL claims while a complaint is pending with the *New York State Division of Human Rights* ("NYSDHR"). 463 N.E.2d 597, 600 (N.Y. 1984); *see, e.g.*, *Schwartz v. Middletown City Sch. Dist.*, 2024 WL 1257095, at *9–*10 (S.D.N.Y. Mar. 25, 2024). That holding should not extend to EEOC charges, which differ from NYSDHR complaints in ways that are material to this analysis. *Pan America* relied on CPLR Section 204(a), which allows tolling when a "statutory prohibition" prevents the "commencement of action." CPLR § 204(a). Because the NYSHRL prevents an individual from commencing an action in court while a complaint is pending with the NYSDHR, tolling is available under this CPLR provision. N.Y. Exec. Law § 297(9) (providing any "aggrieved person" a cause of action in court "*unless such person had filed a complaint hereunder or with any local commission on human rights*") (emphasis added);

---

*of New York*, 2025 WL 754147, at *5 (E.D.N.Y. Mar. 10, 2025); *see also Donahue v. Metropolitan Life Ins. Co.*, 2025 WL 1194738, at *7 (S.D.N.Y. Mar. 5, 2025).

*Bleichert v. N.Y. State Educ. Dept.*, 793 F. App'x 32, 34 (2d Cir. 2019) ("[O]nce an individual has brought a claim before the NYSDHR, she may not pursue it again 'as a plenary action in another court.'") (citations omitted). This rationale does not apply to the filing of an EEOC Charge, because filing an EEOC charge does not prohibit an individual from filing NYSHRL claims in court. *See, e.g.*, *Johnson*, 421 U.S. at 459 (filing an EEOC charge for purposes of Title VII does not prevent an individual from "pursu[ing] independently his rights under . . . other applicable state and federal statutes").

The fact that the EEOC cross-files charges with the NYSDHR under a Worksharing Agreement between the two agencies does not change the result, because cross-filing by the EEOC does not trigger a statutory prohibition against filing a lawsuit. To the contrary, the NYSHRL expressly provides that a "complaint filed by the [EEOC] to comply with the requirements of 42 USC 2000e-5(c) . . . shall not constitute the filing of a complaint within the meaning of [Section 297(9)]", Exec. Law § 297(9), and thus "does not trigger the § 297(9) bar to court action," *Oliver v. N.Y. Tel. Co.*, 1993 WL 173471, at *2 (W.D.N.Y. Mar. 31, 1993) (citations omitted); *see also, e.g.*, *York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 127 n.2 (2d Cir. 2002); *Krause v. Kelehan*, 2018 WL 2021484, at *7 (N.D.N.Y. Apr. 26, 2018) (quoting § 297(9) for the proposition that "filing an EEOC complaint 'to comply with the requirements of' Title VII does not qualify as 'the filing of a complaint within the meaning of' the HRL"); *EEOC v. Rotary Corp.*, 164 F. Supp. 2d 306, 310 (N.D.N.Y. 2001) ("Regardless of any notation at the time of filing, or the Worksharing Agreement, a charge of discrimination filed with the EEOC cannot be considered filed with the DHR for election of remedy purposes until such time as the complaint is actually forwarded to the DHR by EEOC, and DHR opens a file."); *Bawa v. Brookhaven Nat. Laboratory, Assoc. Univs., Inc.*, 968 F. Supp. 865, 870 (E.D.N.Y. 1997) ("The plain-meaning interpretation of the language

from § 297(9) states that unless such person had filed a Charge of Discrimination with the NYSDHR they may still bring suit.”).

In short, because tolling under CPLR § 204(a) applies only when there is a statutory bar to court action, and Wright's EEOC charge does not create such a statutory bar, this Court should find that statutory tolling is inapplicable to Wright and dismiss his NYSHRL claim.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Wright's Complaint in full.

Dated: March 30, 2026

Respectfully submitted,

*/s/ Wendy C. Butler*

Wendy C. Butler (Bar Roll # 707293)
Julia A. Williamson (Bar Roll # 707228)
JONES DAY
250 Vesey Street
New York, NY 10281-1047
Tel: 212.326.3939
Fax: 212.755.7306
wbutler@jonesday.com
jwilliamson@jonesday.com

Eric S. Dreiband (*pro hac vice to be filed by April 3, 2026*)
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001-2113
Tel: 202.879.3780
Fax: 202.626.1700
esdreiband@jonesday.com

*Counsel for Defendant Cornell University*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 30, 2026, a true and accurate copy of the foregoing was filed using the CM/ECF system which will send notification of such filing to the Court and Plaintiff's counsel.

Respectfully submitted,

*/s/ Wendy C. Butler*