**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DR. COLIN WRIGHT,<br>*Plaintiff,*<br>v.<br>CORNELL UNIVERSITY,<br>*Defendant.* | Case No. 3:26-cv-127-GTS-ML |

**DEFENDANT CORNELL UNIVERSITY'S REPLY**
**IN SUPPORT OF ITS MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

**I. WRIGHT FAILS TO SHOW STANDING** .......... 1

**A. Wright adopts the contemporaneous statements that foreclose standing.** .......... 2

**B. Wright does not even argue that he has standing to seek prospective relief.** .......... 5

**II. WRIGHT'S TITLE VII CLAIMS (COUNTS 1 AND 2) ARE TIME-BARRED** .......... 6

**III. WRIGHT'S NEW YORK CLAIMS (COUNTS 3, 4, AND 5) ARE TIME-BARRED** .......... 9

# TABLE OF AUTHORITIES

**Page**

**CASES**

*All. for Env'tal Renewal, Inc. v. Pyramid Crossgates Co.*,
436 F.3d 82 (2d Cir. 2006)....5

*Andrews v. Freemantlemedia N.A., Inc.*,
2014 WL 6686590 (S.D.N.Y. Nov. 20, 2014)....6, 7, 8, 9

*Carney v. Adams*,
592 U.S. 53 (2020)....1, 2

*Clark v. Hanley*,
89 F.4th 78 (2d Cir. 2023)....6, 8

*Corcoran v. N.Y. Power Auth*,
202 F.3d 530 (2d Cir. 1999)....7

*Credit Suisse Sec. (USA) LLC v. Simmonds*,
566 U.S. 221 (2012)....9

*Dillman v. Combustion Engineering*,
784 F.2d 57, 60 (2d Cir. 1986)....9

*Este-Green v. Astrue*,
2009 WL 2473509 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.)....2, 5

*Frink Am., Inc. v. Champion Road Machinery, Ltd.*,
48 F. Supp. 2d 198 (N.D.N.Y. 1999)....5

*Gabin v. Greenwich House, Inc.*,
210 A.D.3d 497 (N.Y. App. Div. 1st Dep't 2022)....10

*Katz v. Donna Karan Co.*,
872 F.3d 114 (2d Cir. 2017)....4

*Knaust v. City of Kingston*,
193 F. Supp. 2d 536 (N.D.N.Y. 2002)....4

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*,
501 U.S. 350 (1991)....9

*Manello v. Nationwide Mut. Ins. Co.*,
2012 WL 3861236 (E.D.N.Y. Sept. 4, 2012) ....................10

*Menominee Indian Tribe of Wisconsin*,
577 U.S. 250 (2016)....................8

*Morris v. Broadridge Fin. Servs.*,
2010 WL 5187669 (E.D.N.Y. Dec. 14, 2010) ....................6

*Morse v. Univ. of Vermont*,
973 F.2d 122 (2d Cir. 1992)....................6

*Murthy v. Missouri*,
603 U.S. 43 (2024)....................5

*Rotkiske v. Klemm*,
890 F.3d 422 (3d Cir. 2018), *aff'd*, 589 U.S. 8 (2019) ....................7

*Rusyniak v. Gensini*,
2009 WL 3672105 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) ....................5

*Saint-Jean v. Emigrant Mortg. Co.*,
129 F.4th 124 (2d Cir. 2025) ....................9

*Shockley v. Minner*,
2008 WL 2699978, (D. Del. July 10, 2008) ....................7

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009)....................5

*Syeed v. Bloomberg L.P.*,
41 N.Y.3d 446 (N.Y. 2024) ....................10

*Washington v. County of Rockland*,
373 F.3d 310 (2d Cir. 2004)....................7

*Whiteside v. Hover-Davis*,
995 F.3d 315 (2d Cir. 2021)....................6

**STATUTES**

42 U.S.C. § 2000e–5 ....................6, 7

Exec. Law § 297(9)....................10

**RULES**

Rule 12(b)(6) ......... 6

CPLR § 204(a) ......... 10

Wright's Opposition (Dkt. 30-10 ("Opp.")) confirms that this Court should dismiss his claims. Wright concedes that he must have been "able and ready to apply" to Cornell to have standing. His contemporaneous social media posts confirm he was not. And although he insists that Cornell "scrupulously omitted" the "full context" of those posts, the "essential context" he highlights only further demonstrates his commitment to leaving academia behind.

With respect to the untimeliness of his claims, Wright does not contest that Cornell publicly announced in October 2022 that it hired someone for the position at issue, or that Wright filed his charge with the Equal Employment Opportunity Commission ("EEOC") *years* after that announcement. Faced with a delay that renders his federal claims untimely, Wright invokes no less than three different legal doctrines to argue that his late filing should be excused, but each requires diligence. His failure to do *anything* between the October 2022 hiring announcement and June 2025 forecloses a finding of diligence. Regarding his New York claims, he does not dispute that he had three years to file them in court and failed to do so. Instead, he argues that his pending EEOC charge tolled the statute of limitations, but after acknowledging this is an "open question," he fails to distinguish Cornell's authorities that resolve this question in Cornell's favor.

## I. WRIGHT FAILS TO SHOW STANDING

Wright's response brief provides no reason to question his lack of standing. For Wright's damages claim, the parties agree on the law. He had to "be 'able and ready' to apply for" a position at Cornell in 2021. Opp. 11 (quoting *Carney v. Adams*, 592 U.S. 53, 60 (2020)). So the dispute boils down to a factual question: Did he, even as he publicly expressed glee at having left academia and avoided being (to his mind) "subjected to insane struggle sessions and pressured to produce . . . pathetic Maoist apologies," secretly long to enter "an environment prone to 'struggle

sessions' with 'Maoist apologies'"? Opp. 6 (quoting Butler Decl. Ex. I). Wright answered that question at the time: "No thanks! ✌️" Butler Decl. Ex. I.

Regarding Wright's claims for prospective relief, he does not meaningfully contest that he lacks an imminent future injury. So his claims must be dismissed if Cornell's arguments clear the "modest" "facially meritorious" standard. *Este-Green v. Astrue*, 2009 WL 2473509, at *2 & n.2–3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (quotations omitted). They do.

**A. Wright adopts the contemporaneous statements that foreclose standing.**

To have standing to seek damages for Cornell's hiring decision, Wright had to show—as he agrees—that he was "able and ready" to apply for a job at Cornell when the hiring process occurred. *Carney*, 592 U.S. at 60. He attempts to reframe the question as whether he "had given up any interest in teaching." Opp. 4. But the question is whether he was able and ready to seek a job *at Cornell*. The contemporaneous evidence makes clear he was not.

**1.** The contemporary record shows that Wright chose to give up his academic job search in April 2020. In tweet after tweet, he confirmed he "left academia." *See* Butler Decl. Ex. B, April 6, 2020 tweet; *see also id.* Ex. A, April 5, 2020 tweet ("Leaving academia. 😀"); *id.* Ex. E, August 1, 2020 tweet ("I chose to leave academia"); *id.* Ex. H, June 16, 2021 tweet ("I'm so glad I left academia last year"). He told his followers that his "academic job search … did not work out." *Id.* Ex. B, April 6, 2020 tweet; *see also id.* Ex. A, April 5, 2020 tweet ("[I]t is official. I *was* looking for faculty jobs, to no avail." (emphasis added)). Wright chose to end his search because he believed that "cancel culture was likely successful in destroying [his] reputation enough that pursuing a tenure track job would have been a waste of time." *Id.* Ex. E, August 1, 2020 tweet.

Faced with his own repeated, contemporary statements showing that he was not "able and ready" to apply for a job at Cornell in December 2020, *Carney*, 592 U.S. at 60, Wright concedes

their authenticity and accuses Cornell of omitting "essential context." Opp. 5. But the "context" only confirms that he had given up his job search. Wright notes, for example, that the tweet that began "I am so glad I got out of academia when I did" continued "**so I wouldn't be subjected to insane struggle sessions and pressured to produce these pathetic Maoist apologies. No Thanks!**" Opp. 6. He also highlights why he had given up the job hunt ("cancel culture" and "academic orthodoxy"). Opp. 5–6, 8. And he points to his sadness that he "missed out on" teaching. Opp. 6. All of that confirms that Wright no longer sought an academic job.

Wright seems to recognize that the context for his contemporaneous statements does not actually help his case. All he says of the "essential context" is that his statements "show [he] was convinced that faculty hiring decisions would be driven by the priorities of human resources departments and not merit" and believed he had "had little hope of getting a fair shake from universities like Cornell." Opp. 6. In other words, the context he highlights explains *why* he gave up the job search; it does not show that he persisted.

**2.** Wright's November 2021 application to the University of Austin ("UATX") is entirely consistent with that decision. Indeed, his cover letter makes clear that he "let go of [his] dream and left academia in April 2020." Wright Decl. Ex. B. But he believed that "UATX offered something that almost no universities—and certainly not Cornell—were offering." Opp. 9. Wright was interested in UATX precisely because it was founded in direct opposition to major universities like Cornell. Wright Decl. ¶ 10. The article that he says inspired him to apply describes other universities as "illiberal" hellscapes that "chill speech and ostracize those with unpopular viewpoints," places where "faculty are being treated like thought criminals." Wright Decl. Ex. D at 3–4. It ends with a plea to people like Wright: "to those of you who share our sense that something fundamental is broken—we ask that you join us in our effort to renew higher

education." *Id.* at 7. Wright answered the call, and he made clear in his cover letter that he was interested *only* in UATX. He explained that he chose to pursue an academic career because he thought it "the most intellectually challenging and satisfying profession imaginable," but "the culture within academia had shifted so much that it [bore] little resemblance to the truth-focused institutions that had initially inspired [him]." Wright Decl. Ex. B. So, he told them, he had "let go of [his] dream and left academia in April 2020." *Id.* But he applied there because the UATX "position could not be more ideally suited to [his] interests." *Id.* It appears that he applied nowhere else. Given the emphasis Wright places on this one application in 2021, he surely would have mentioned a second if he had filed one.

A single application to a school that "offered something that almost no universities—and certainly not Cornell—were offering" does nothing to prove that Wright also wanted what Cornell *was* offering. *See* Opp. 9. And the fact that he seems not to have applied to any conventional universities in 2021 or anytime thereafter indicates that—as he told his Twitter followers and the UATX selection committee—he had given up his broader academic job search. It is as if a baseball player announced that he had given up his dream of playing major league baseball because the league's decision to install pitch clocks destroyed the leisurely pace of the sport, then tried out for an experimental league that did not impose such restrictions on the tempo of the game. That would provide no reason to think that he was actually ready and able to try out for the Mets all along.

**3.** For those reasons, Wright has failed to prove "by a preponderance of the evidence that subject matter jurisdiction exists." *Katz v. Donna Karan Co.*, 872 F.3d 114, 120 (2d Cir. 2017). When it comes to subject matter jurisdiction, "no presumptive truthfulness attaches to a plaintiff's allegations." *Knaust v. City of Kingston*, 193 F. Supp. 2d 536, 540 (N.D.N.Y. 2002) (quotations omitted). Instead, the Court must weigh conflicting evidence and "decide for itself the factual

issues which determine jurisdiction." *Id.* (quotations omitted). Here, there is no conflicting evidence. The extensive and uncontested contemporaneous evidence demonstrates that Wright gave up on his broader academic job search. His bald assertion—made only when faced with Cornell's Motion—that he would have applied for a job in "an environment" he saw as "prone to 'struggle sessions' with 'Maoist apologies'" is simply not credible. Opp. 6.[1]

If any doubt remains, Cornell asks that the Court authorize "limited discovery on the jurisdictional issue." *All. for Env'tal Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 (2d Cir. 2006). From there, Cornell respectfully submits that supplemental briefs addressing new evidence and/or "a hearing limited to Article III standing" would be appropriate. *Id.*

**B. Wright does not even argue that he has standing to seek prospective relief.**

Wright makes no meaningful argument that he faces a "real and immediate threat" of future injury, so he lacks standing to seek injunctive relief. *Murthy v. Missouri*, 603 U.S. 43, 58 (2024). His brief in opposition glancingly cites a single webpage that notes Cornell's commitment to diversity and inclusion, including in faculty hiring. Opp. 11. But he offers no argument that the mere existence of Cornell's webpage somehow threatens him with injury "that is concrete and particularized" and "actual and imminent." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). So his claims for injunctive relief should be dismissed as long as Cornell carries the "modest" burden of showing that its arguments are "facially meritorious." *Este-Green*, 2009 WL 2473509, at *2 & n.2–3 (quotations omitted); *see also Rusyniak v. Gensini*, 2009 WL 3672105, at

[1] Wright's opposition does not rely on (or even mention) his declaration's claim that he "continued publishing peer-reviewed academic papers." Wright Decl. ¶ 8. He therefore forfeited any reliance on that claim. *Frink Am., Inc. v. Champion Road Machinery, Ltd.*, 48 F. Supp. 2d 198, 209 (N.D.N.Y. 1999). And, the few publications cited—none in 2022; one in 2023; none in 2024; and one each in 2025 and 2026—do not establish that Wright had any interest in applying to Cornell.

*1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.). Cornell's argument that someone who left academia years ago is not injured by its policies nor its speech clears that low bar.

## II. WRIGHT'S TITLE VII CLAIMS (COUNTS 1 AND 2) ARE TIME-BARRED

Wright's Title VII claims are time-barred because he failed to file his EEOC charge within 300 days of the October 3, 2022 hiring announcement. Dkt. 23-1 at 9–12 ("Mot."). He does not dispute these facts. Instead, in a scattershot attempt to revive his claims, he first argues that Cornell's motion is premature, and then offers no fewer than three different theories as to why the limitations period should not be measured from October 3, 2022. Each of these arguments fails.

**1.** Wright's own cited authority undermines his argument that Cornell's motion is premature. *See* Opp. 12. In *Clark v. Hanley*, the court noted that "a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." 89 F.4th 78, 94 (2d Cir. 2023) (quoting *Whiteside v. Hover-Davis*, 995 F.3d 315, 319 (2d Cir. 2021)); *see also* Mot. 10 (citing cases granting Rule 12(b)(6) dismissals of untimely claims). Here, the defect appears on the face of the Complaint, which alleges that the at-issue hiring decision occurred between "2020-2022," Compl. ¶ 127, and that he did not file his EEOC charge until July 28, 2025, Compl. ¶ 85, almost two years after the 300-day period expired.

**2.** Wright next attempts to avoid dismissal by arguing that the 300-day period should be measured not from the hiring announcement, but from when he "found out about Cornell's actions" through Christopher Rufo's X post on June 26, 2025. Opp. 12–13. But under Title VII, a claim accrues when "the alleged unlawful employment practice *occurred*." 42 U.S.C. § 2000e–5 (emphasis added). An unlawful practice "occurs" when the plaintiff is on notice of the alleged injury, not when the plaintiff discovers the employer's alleged unlawful motive. *Morris v. Broadridge Fin. Servs.*, 2010 WL 5187669, at *3 (E.D.N.Y. Dec. 14, 2010); *see also Andrews v.*

*Freemantlemedia N.A., Inc.*, 2014 WL 6686590, at *6, n.1 (S.D.N.Y. Nov. 20, 2014) (citing *Morse v. Univ. of Vermont*, 973 F.2d 122, 125 (2d Cir. 1992)). The hiring announcement provided Wright notice of the conduct that underlies his Title VII claims. Mot. 10–12. Thus, his claims accrued in October 2022, when he "ha[d], or with reasonable *diligence* should have, discovered" the hiring announcement. *See Andrews*, 2014 WL 6686590, at *6 (quoting *Corcoran v. N.Y. Power Auth*, 202 F.3d 530, 544 (2d Cir. 1999)) (emphasis added).

Wright's cited cases provide no basis to ignore Title VII's text-based occurrence approach to accrual. 42 U.S.C. § 2000e–5(e)(1). Rather, Wright's lead case, *Washington v. County of Rockland*, 373 F.3d 310, 319 (2d Cir. 2004), found that the plaintiffs' claims accrued when the alleged unlawful conduct, the filing of disciplinary charges, *occurred*. Wright also cites *Shockley v. Minner*,[2] *see* Opp. 14, an out-of-circuit district court case, for its endorsement of a "discovery rule." 2008 WL 2699978, at *2 (D. Del. July 10, 2008). But *Shockley* relied on dictum that the Third Circuit later expressly overruled in *Rotkiske v. Klemm*, 890 F.3d 422, 428 (3d Cir. 2018) (a "discovery rule" does not apply when the statutory text measures the limitations period from the date a violation "occurs"), *aff'd*, 589 U.S. 8 (2019). The Supreme Court agreed: "[i]t is not our role to second-guess Congress' decision to include a 'violation occurs' provision, rather than a discovery provision[.]" *Rotkiske*, 589 U.S. at 14. These cases confirm, rather than refute, that Wright's claims accrued in October 2022, when he knew—or "with reasonable diligence should have" known—the "critical facts." *Andrews*, 2014 WL 6686590, at *6.

**3.** Wright's invocation of equitable tolling also fails. He attempts to appeal to the fairness

---

[2] Wright's reliance on cases like *Washington* and *Shockley* that do not involve Title VII claims is improper. *Andrews*, 2014 WL 6686590, at *6, n.1 ("[O]ne accrual rule cannot simply be imported into another body of law.").

principles that "undergird[ ] this entire analysis of equitable tolling." Opp. 16. But fairness only gets him so far. As noted by Wright's own authority, courts have no discretion to apply equitable tolling without a showing of both diligence and extraordinary circumstances. *Menominee Indian Tribe of Wisconsin*, 577 U.S. 250, 256 (2016) (the Supreme Court has "reject[ed] requests for equitable tolling where a litigant failed to satisfy one" of the required elements); *Clark v. Hanley*, 89 F.4th 78, 92 (2d Cir. 2023) ("The law prohibits a judge from exercising her discretion where these two elements are missing[.]" (citations omitted)). Wright demonstrates neither.

As for diligence, apart from resorting to vague fairness arguments, Wright also notes that "[t]he equitable tolling standard requires *reasonable* diligence, not *maximum* diligence." Opp. 15. But that is of no moment: Wright's Complaint does not allege *any* diligence. This fact alone forecloses his claims. Nor does Wright demonstrate "extraordinary circumstances," which, as he concedes, must involve circumstances "beyond [his] control." Opp. 16. While he asserts that the lack of job posting "made it *impossible*" for him to file his lawsuit in a timely manner, his allegations establish the contrary. He does not dispute that the hiring decision was announced on Cornell's Ecology and Evolutionary Biology department website. According to Wright, "only roughly one percent of research doctorate recipients in America receive[] their degree in Ecology or Evolutionary Biology," a field that is "highly specialized, with only a tiny fraction of academics participating in the field." Compl. ¶¶ 25, 28. It is far from impossible for Wright to have uncovered a widely publicized hiring decision within the "tiny fraction of academics" who participated in his field, particularly if, as he contends, he "would have applied" to the position. Compl. ¶¶ 25, 30.

And Wright is simply wrong that it would "make a mockery of the Civil Rights Act" to require him to file an EEOC charge merely because the October 2022 announcement revealed that Cornell had hired a "person of color with no evidence suggesting there was any unlawful activity."

Opp. 16–17. A court will not "apply equitable tolling where the claimant contends that he or she discovered the alleged discriminatory motive for the employer's act years later[.]" *Andrews*, 2014 WL 6686590, at *6. Wright was on notice of the critical facts—that Cornell had hired a person of a different race within his area of interest—in October 2022. His Title VII claims are thus time-barred, regardless of when he claims he became aware of alleged "unlawful activity."

**4.** Wright invokes fraudulent concealment in a final attempt to avoid dismissal, Opp. 17, but Wright's cases make clear that fraudulent concealment will toll the statute of limitations only if the plaintiff's ignorance is "*without any fault or want of diligence or care on his part*." *Credit Suisse Sec. (USA) LLC v. Simmonds*, 566 U.S. 221, 226–27 (2012) (quoting *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991)); *see also Saint-Jean v. Emigrant Mortg. Co.*, 129 F.4th 124, 143 (2d Cir. 2025) ("[T]he plaintiff's ignorance of the claim did not result from a lack of diligence."). Because Wright exercised no diligence between October 3, 2022 and June 2025, he cannot rely on the fraudulent concealment doctrine.[3]

## III. WRIGHT'S NEW YORK CLAIMS (COUNTS 3, 4, AND 5) ARE TIME-BARRED

Wright does not dispute that he had three years—until October 2025—to file his New York Human Rights Law ("NYSHRL") claims in court. He makes two arguments regarding his untimely January 26, 2026 Complaint. His first argument, equitable tolling, is easily dispensed with; Wright relies on his deficient arguments for equitable tolling under Title VII, Opp. at 18, addressed above.

Wright's only remaining argument is that his EEOC charge tolled the statute of limitations

---

[3] In *Dillman v. Combustion Engineering*, the Second Circuit did not reach the diligence issue because it determined that equitable tolling did not apply on other grounds: the plaintiff "simply did not present *any evidence* that he was unaware of his cause of action under the ADEA because of appellee's misleading conduct." 784 F.2d 57, 60 (2d Cir. 1986) (emphasis added).

under a Worksharing Agreement between the EEOC and the New York State Division of Human Rights ("DHR"). But Cornell demonstrated that neither the Worksharing Agreement nor the relevant statutes toll NYSHRL claims while an EEOC charge is pending. Mot. 12–16. In response, Wright cites a handful of unpersuasive cases that do not engage with Cornell's argument that the tolling of an NYSHRL claim is inconsistent with the relevant statutory language. *See Gabin v. Greenwich House, Inc.*, 210 A.D.3d 497, 498 (N.Y. App. Div. 1st Dep't 2022) (finding plaintiff's action timely due to executive order issued during the pandemic and commenting on statutory tolling in dicta); *Manello v. Nationwide Mut. Ins. Co.*, 2012 WL 3861236, at *11 (E.D.N.Y. Sept. 4, 2012). And *Syeed*, which does not concern statutory tolling at all, explains that the NYSHRL is to be construed broadly "to the extent that such a construction is *reasonably possible*." *Syeed v. Bloomberg L.P.*, 41 N.Y.3d 446, 451 (N.Y. 2024) (emphasis added). Cornell's argument—which Wright leaves entirely unaddressed—is that it is *not reasonably possible* to construe CPLR § 204(a) and Exec. Law § 297(9) as allowing for statutory tolling based on the filing of an EEOC charge.

Wright agrees with Cornell that whether a pending EEOC charge tolls the statute of limitations for NYSHRL claims is an "open question." Opp. 19; Mot. 13 n.3. Existing precedent decisively favors Cornell's position. As Cornell demonstrated, Mot. 14, the Second Circuit has held that a pending EEOC charge does not toll the statute of limitations on claims that do not arise under Title VII, and the applicable New York statutes provide no basis for deviating from this Second Circuit precedent. Given Wright's failure to distinguish these authorities, the Court should dismiss his NYSHRL claims as untimely.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss Wright's Complaint in full.

Dated: May 11, 2026

Respectfully submitted,

*/s/ Wendy C. Butler*

Wendy C. Butler (Bar Roll # 707293)
Julia A. Williamson (Bar Roll # 707228)
JONES DAY
250 Vesey Street
New York, NY 10281-1047
Tel: 212.326.3939
Fax: 212.755.7306
wbutler@jonesday.com
jwilliamson@jonesday.com

Eric S. Dreiband (*pro hac vice*)
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001-2113
Tel: 202.879.3780
Fax: 202.626.1700
esdreiband@jonesday.com

*Counsel for Defendant Cornell University*

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2026, a true and accurate copy of the foregoing was filed using the CM/ECF system which will send notification of such filing to the Court and Plaintiff's counsel.

Respectfully submitted,

*/s/ Wendy C. Butler*