UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

DR. COLIN WRIGHT

Plaintiff,

v. 3:26-CV-0127 (GTS/ML)

CORNELL UNIVERSITY

Defendant.

---

APPEARANCES: OF COUNSEL:

MCLAUGHLIN & STERN LLP — CHESTER R. OSTROWSKI, ESQ.
Counsel for Plaintiff
260 Madison Avenue
New York, NY 10016

1122 Franklin Avenue, Suite 300 — MARK LUCCARELLI, ESQ.
Garden City, NY 11530

AMERICA FIRST POLICY INSTITUTE — ANDREW ZIMMITTI, ESQ.; RICHARD LAWSON, ESQ.
Co-Counsel for Plaintiff
1455 Pennsylvania Ave., N.W.
Washington, DC 20004

JONES DAY — WENDY C. BUTLER, ESQ.; JULIA WILLIAMSON, ESQ.
Counsel for Defendant
250 Vesey Street
New York, NY 10281

51 Louisiana Avenue N.W. — ERIC S. DREIBAND, ESQ.
Washington, D.C. 20001-2113

GLENN T. SUDDABY, United States District Judge

**DECISION and ORDER**

Currently before the Court, in this employment discrimination action filed by Dr. Colin Wright ("Plaintiff") against Cornell University ("Defendant") is Defendant's motion to dismiss

for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), and to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 23.) For the foregoing reasons, Defendant's motion is granted and Plaintiff's Complaint is dismissed without prejudice for lack of subject matter jurisdiction.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Claims

Generally, Plaintiff's Complaint alleges that Defendant, a large, private undergraduate and graduate institution, discriminated against white educators through its process of hiring a faculty member within the Department of Ecology and Evolutionary Biology ("Department") beginning in December 2020 until Defendant's public announcement of the hiring on October 3, 2022. (*See generally* Dkt. No. 1 [Plf.'s Compl.].) Defendant's hiring process, according to Plaintiff, prioritized selection of a racially or ethnically diverse candidate, as evidenced by internal communications, and remained secret despite Defendant's hiring policies requiring public notice. *Id*. Plaintiff claims that the racially discriminatory hiring process violated Title VII of the Civil Rights Act of 1964 §§ 703(a)(1) and 703(a)(2) (42 U.S.C. §§ 2000e-2(a)(1) and 2000e-2(a)(2)) ("Title VII claims") and New York's Human Rights Law ("NYSHRL") §§ 296(1)(a), 296(1)(d), and 296(13) (N.Y. Exec. L. § 296) ("State Law claims"). *Id*.

### B. Summary of Parties' Arguments on Defendant's Motion

#### 1. Defendant's Motion to Dismiss

Generally, in support of its motion to dismiss, Defendant asserts the following four arguments: (1) Plaintiff lacks standing because, by his own admission, he was no longer seeking opportunities within academia by December 2020 when Defendant initiated its hiring process; (2) Plaintiff fails to show an impending or future injury to him, further confirming his lack of

standing and prohibiting the injunctive relief he seeks; (3) Plaintiff's Title VII claims are time-barred based on the July 28, 2025, filing of his discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), which was more than 300 days after the public announcement of the hiring of the new faculty member in the Department on October 3, 2022; and (4) Plaintiff's State Law claims are also time-barred based on the applicable three-year statute of limitations because those claims accrued on October 3, 2022, when the public announcement of the hiring decision placed Plaintiff on notice of Defendant's hiring activity for a position that had not been publicly advertised. (*See generally* Dkt. No. 23, Attach. 1.)

**2. Plaintiff's Opposition Memorandum of Law**

Generally, in Plaintiff's response to Defendant's motion, he asserts the following five arguments: (1) Defendant's exhibits and Plaintiff's declaration demonstrate that Plaintiff continued to seek employment within academia such that he has shown that he was "ready and able" to accept a position with Defendant at the relevant time as required to establish standing; (2) Plaintiff's Title VII claims are not time-barred because the accrual date is instead June 26, 2025, when Plaintiff learned of the hiring decision, as well as of Defendant's use of an "out of the ordinary" search process and desire to hire a "diverse" candidate, through social media; (3) Defendant's secretive hiring process prevented Plaintiff from recognizing Defendant's discriminatory conduct sooner and thus warrants equitable tolling of the statute of limitations for the Title VII claims should the Court find that the accrual date was not June 26, 2025; (4) Plaintiff's State Law claims are similarly proper under New York's analogous equitable tolling doctrine; and (5) tolling of Plaintiff's claims is additionally proper under a fraudulent concealment theory. (*See generally* Dkt. No. 30, Attach. 10 [Plf.'s Opp'n Memo. of Law].)

**3. Defendant's Reply Memorandum of Law**

Generally, in its reply, Defendant asserts the following seven arguments: (1) Plaintiff continues to offer no evidence that he sought employment with Defendant or even other comparable institutions during the relevant time that would suggest he was "able and ready to apply" to such academic positions despite his many social media statements asserting that he had chosen to leave academia in early 2020 for a number of reasons; (2) Plaintiff has yet to address what injury confronts him to merit injunctive relief; (3) Plaintiff's Complaint, alleging that the hiring process lasted from 2020 to 2022, despite not filing the EEOC charge until July 28, 2025, is sufficient to establish Defendant's entitlement to seek dismissal based on the affirmative defense of untimeliness because that defense is clear on the face of the Complaint itself; (4) Plaintiff cannot measure the accrual period from when he personally discovered Defendant's hiring process but rather the appropriate accrual date is from October 3, 2022, when he was on notice of the hiring; (5) Plaintiff can show neither the requisite diligence nor extraordinary circumstances to permit equitable tolling as to either his Title VII or State Law claims; (6) Plaintiff's lack of diligence similarly defeats any assertion regarding fraudulent concealment; and (7) Plaintiff's citations to New York statutory and case precedent to justify tolling of claims pursuant to the NYSHRL where there is a pending EEOC charge are unpersuasive. (*See generally* Dkt. No. 31.)

## II. RELEVANT LEGAL STANDARDS

### A. Legal Standards Governing Motions to Dismiss for Lack of Subject Matter Jurisdiction

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Generally, "[a] case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d

Cir. 2000) (citing Fed. R. Civ. P. 12[b][1]). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113 (citing *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 [2d Cir. 1986]).

More specifically, "[w]hen . . . a jurisdictional challenge under Fed. R. Civ. P. 12(b)(1) is addressed to the complaint, a court accepts as true all the factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff." *Lunney v. U.S.*, 319 F.3d 550, 554 (2d Cir. 2003) (citing, *inter alia*, *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll.*, 128 F.3d 59, 63 [2d Cir. 1997]); *see also Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (stating that a district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12[b][1] only after "[c]onstruing all ambiguities and drawing all inferences" in a plaintiff's favor) (citing *Makarova*, 201 F.3d at 113).

However, when a defendant challenges the factual basis for the plaintiff's assertion of jurisdiction, "[j]urisdiction must be shown affirmatively, and that showing is not made [merely] by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Servs. Corp v. Drakos*, 140 F.3d 129, 131 (2d Cir.1998); *accord, APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003); *see also Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001) ("In a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the defendant may challenge either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both. . . . If the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations . . . , the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff . . . But where evidence relevant to the jurisdictional question is before the court, the district court . . . may refer to that evidence.") (internal quotation marks and citations

omitted).

In such a case, "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner*, 82 F.3d 560, 562 [2d Cir. 1996]); *see also Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003) ("Plaintiffs bear the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists.") (internal quotation marks omitted).

**B. Legal Standard Governing Motions to Dismiss for Failure to State Claim**

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp.2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has

held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212, n.17 (citing Supreme Court cases) (emphasis added).[1]

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp.2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp.2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an

---

[1] *Accord, Flores v. Graphtex*, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (Munson, J.); *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998); *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y.1995) (McAvoy, C.J.).

actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is “plausible,” the Supreme Court explained that “[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.” *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). “[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief.” *Iqbal*, 129 S.Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard “asks for more than a sheer possibility that a defendant has acted unlawfully,” *id*., it “does not impose a probability requirement.” *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, “the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice.” *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only “tenders naked assertions devoid of further factual enhancement” will not suffice. *Iqbal*, 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[2]

---

[2] *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . . Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary

## III. ANALYSIS

### A. Whether Plaintiff Lacks Standing to Bring His Claims, Warranting Dismissal of His Complaint for Lack of Subject Matter Jurisdiction

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memoranda of law. *See, supra,* Part I.B.1 and 3 of this Decision and Order. To those reasons, the Court adds the following points.

In situations where a plaintiff is challenging a discriminatory hiring process or program and there is a reason as to why he or she is unable to apply for that program, they can establish standing to sue by demonstrating "that they are able and ready to apply, but a discriminatory policy prevents them from doing so on equal footing." *Do No Harm v. Pfizer, Inc.*, 126 F.4th 109, 118 (2d Cir. 2025) (citing *Gratz v. Bollinger*, 539 U.S. 244, 262 [2003]). Because Plaintiff has here alleged that he was prevented from applying for the relevant position as a result of Defendant's allegedly discriminatory search process, this is the standard he must meet. The Court agrees with Defendant that Plaintiff was perhaps able but not ready to apply to jobs with Defendant during the time of Defendant's alleged actions because the documentation submitted along with Defendant's motion (which, as discussed above in Part II.A of this Decision and Order, the Court may consider on this fact-based challenge to the existence of subject matter jurisdiction) shows that Plaintiff "stopped looking for academic jobs altogether months before Cornell filled the position and publicly announced its hiring decision." (Dkt. No. 23, Attach. 1 [citing Dkt. No. 1 at ¶ 138].)

The Court accepts that Plaintiff could have still been injured by Defendant's hiring

judgment.") (internal quotation marks and citation omitted).

process and decision if he maintained an interest in rejoining academia from December 2020 to October 3, 2022. However, in assessing the record, the Court finds Plaintiff had no intention of reentering academia after publicly announcing his departure from it after April 2020, much less specifically to apply for a position with Defendant. Specifically, Plaintiff's social media activity (Dkt. No. 23, Attachs. 3-11), quotes to the *Daily Caller* news outlet (Dkt. No. 23, Attach. 12), and authorship of a *Wall Street Journal* editorial (Dkt. No. 23, Attach. 13), all since April 2020, uniformly reference that he had left academia. Despite his allegations that he would have applied for and/or accepted the position with Defendant (Dkt. No. 1, at ¶¶ 120, 142, 150), his own statements contradict such a readiness to apply or work for Defendant during the relevant time period: notably, Plaintiff expressed his belief that he was not likely to be hired by academic institutions because he had been told that his "social media presence and popular essays" presented potential "liability concerns" for academic employers, because academia involves a "high degree of ideological policing" that "doesn't bode well for me," because "cues and signals" he had received "makes it clear that my views will likely make it very difficult to *ever* land a job in academia," and because of "how my public views diverged with academic orthodoxy"; and he also expressed that he was "glad" to have left academia "so I wouldn't be subjected to insane struggle sessions and pressured to produce these pathetic Maoist apologies." (Dkt. No. 23, Attach. 4, at 2; Dkt. No. 23, Attach. 5, at 2; Dkt. No. 23, Attach. 6; Dkt. No. 23, Attach. 11, at 2.)[3] Nothing in his various statements, all but one of which were made in April 2020, suggests that he would have applied for the relevant position with Defendant in late 2020.

Further, documents that Plaintiff has submitted show that Defendant is (or at least was at

[3] Citation to specific page numbers refer to the header numbers generated by CM/ECF, not the pagination of the individual documents.

the relevant time) precisely the sort of institution that engages in the sort of "ideological policing" with which Plaintiff disagrees, with statements indicating Defendant's commitment in particular to Diversity, Equity, and Inclusion ("DEI"). (Dkt. No. 30, Attachs. 5, 8, 9.) In his declaration, Plaintiff states that he chose not to apply to many open positions at various academic institutions in 2020 and 2021 because they required "submission of a DEI statement as prior screening to the full application or an explanation of how the applicant would use their research to advance DEI," a requirement that he believed suggested that the "merits of his application would not be fairly considered." (Dkt. No. 30, at ¶ 9.) Indeed, his letter to the selection committee at the University of Austin, Texas (which, as will be discussed below, was the only academic institution to which Plaintiff appears to have applied for academic employment during the relevant time period), Plaintiff specifically states that he is interested in working at the University of Austin because its expressed principles were not like those of the "rigidly ideological and intolerant" cultures in other institutions of higher learning. (Dkt. No. 30, Attach. 2, at 2.). The documented fact that Plaintiff was so opposed to the use of any sort of DEI initiatives by academic institutions that he chose not to apply to openings with institutions that included a DEI component in their application process strongly indicates that he was not reasonably "ready" to apply for employment with Defendant, an institution that had an expressly stated commitment to certain DEI initiatives.

The only documentation that Plaintiff submits to counter Defendant's argument, and the factual record, consists of an email and cover letter to the University of Austin as part of his Founding Faculty Fellow application, and his resume documenting his publications. (Dkt. No. 30, Attachs. 1-3.) But these materials do not suggest Plaintiff's general readiness to seek or accept an academic position with Defendant; rather, the cover letter reiterates that "after much

deliberation, [Plaintiff] let go of [his] dream and left academia in April 2020," without elaboration. (Dkt. No. 30, Attach. 2.) Plaintiff's application for employment at one specific university simply does not show that he would have been ready to apply to the relevant position with Defendant had he been permitted to apply. Instead, Plaintiff emphasizes that the University of Austin position, specifically, "could not be more ideally suited to [his] interests," which included "ideas for building a new university." *Id*. The contents of Plaintiff's cover letter align with his overall aversion to academia, as discussed above and as shown in his social media posts and news articles. (Dkt. No. 23, Attachs. 3-13.). Further, despite Plaintiff's claim that he "was actively seeking employment" and "submitted an application to Cornell University and applications to several other colleges and universities like Cornell for similar roles from 2018 to 2021," (Dkt. No. 1, at ¶ 117), the University of Austin application is the only such evidence presented here applicable to the relevant time. Plaintiff himself admits in his declaration that he made a conscious decision to *not* apply to any other institutions that had posted openings because he disagreed with their DEI policies and believed his application would not be fairly considered on the merits of his credentials as a result of those policies. (Dkt. No. 30, at ¶ 9.) Thus, the record presented does not substantiate that Plaintiff was actively seeking to return to academia at the relevant time, but rather only that he sought one academic job at a specific institution that aligned with his values and philosophy. Again, because Plaintiff's own submissions have made clear that Defendant is not an institution aligned with his values and philosophy, he has not plausibly suggested that he was "ready" to apply for a position with Defendant at the relevant time merely because he applied for a single academic position with a different institution in November 2021.

Plaintiff also provides documentation of his continuing to publish academic papers as

evidence that he continued to actively remain ready to apply to academic positions.[4] His resume shows that he published two papers in 2020 and two papers in 2021. (Dkt. No. 30, Attach. 3, at 3.) In his declaration, Plaintiff clarifies that one of these papers was published in December 2020 and another was published in September 2021; it is not clear when the other two were published. (Dkt. No. 30, at ¶ 8.) He further states that he continued publishing such papers "in case I found an appropriate job posting in my field to which I could apply," but, as discussed above, he also admits that he chose not to apply to many posted jobs in his field because of the application process requiring some sort of DEI submission, and in fact the only academic job which he seems to have deemed to be "appropriate" was the one he applied for with University of Austin. As a result, regardless of whether Plaintiff continued to publish academic papers in order to maintain an active academic profile, the record shows that that fact does not translate into a readiness to apply for academic positions in general, much less specifically to apply for the relevant position with Defendant.

Lastly, Plaintiff argues that Defendant's characterization of various decontextualized statements in his social media postings obscures the actual meaning of those statements when taken as a whole. However, Plaintiff's attempts to contextualize Defendant's supposedly misleading excerpts of Plaintiff's social media statements only reinforce the apparent finality of Plaintiff's withdrawal from academia. (Dkt. No. 30, Attach. 10, at 11-12.) For all the above reasons, the Court finds that Plaintiff has not shown that he was "ready" to apply to the relevant position with Defendant, and he thus has not shown that he has standing to pursue his various discrimination claims.

---

4 Of note, Plaintiff does not appear to rely upon this portion of his declaration in the opposition memorandum of law. Nevertheless, the Court will address the matter.

In addition to the existence of standing as a general matter, Defendant also argues that Plaintiff specifically lacks standing to seek the requested injunctive relief, which includes (a) enjoining Defendant from engaging in the sort of employment practice he alleges was engaged in here, and (b) requiring Defendant to remove any language that violates federal or state discrimination laws from its website, policies, and procedures. As to the second of these requests, the Court agrees with Defendant that Plaintiff has not identified any such language on Defendant's website or in their policies and procedures as a basis for his claims, and thus the requested remedy does not flow from the alleged violation as required. Nor does Plaintiff allege any facts to suggest that any such content will cause him a concrete or particularized injury that would warrant injunctive relief.

As to the first of the requests, Plaintiff similarly has not alleged any ongoing or future injury that would make prospective injunctive relief an appropriate remedy. *See Lettieri v. Garver*, 23-CV-1547, 2026 WL 2035478, at *3 n.5 (N.D.N.Y. July 15, 2026) (Lovric, M.J.) (noting that "[i]n seeking prospective relief like an injunction, a plaintiff must show that he can reasonably expect to encounter the same injury again in the future—otherwise there is no remedial benefit that he can derive from such a judicial decree") (quoting *Leder v. Am. Traffic Sols., Inc.*, 81 F. Supp. 3d 211, 222 [E.D.N.Y. 2015], *aff'd,* 630 F. App'x 61 [2d Cir. 2015]) (internal quotation marks omitted); *see also Parker v. Ohlerich*, 25-CV-6299, 2026 WL 972921, at *3 (S.D.N.Y. Apr. 10, 2026) (discussing that allegations of past harms are not sufficient to establish a real or immediate threat of future injury for the purposes of a request for injunctive relief) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 [1983]). Notably, this request is not to compel Defendant to hire him or permit him to apply for the position that has already been filled, a remedy that would redress the injury he has alleged he already suffered. Rather, he

seeks to stop Defendant from engaging in this allegedly secretive method of identifying candidates based on their DEI characteristics for future openings. However, Plaintiff has not plausibly alleged that he would be likely to seek employment with Defendant in the future because, as discussed in detail, the record shows that he has not sought any academic employment during the relevant time other than the specific position with the University of Austin, an institution that he has indicated shares his values and philosophy in a way that other academic institutions who posted open positions during that time did not. Although there is no indication that Defendant specifically was one of those institutions who posted an opening during the relevant time that Plaintiff chose not to apply to, the record does show that Defendant espoused the same sort of DEI values that Plaintiff stated deterred him from applying to openings at other institutions. Further, there is no indication that Defendant intends to again hire faculty for the Department within a period that could conceivably give rise to an imminent risk of harm, or that it will utilize the same hiring process to do so; Plaintiff's own allegations acknowledge that the process for hiring the relevant position was "out of the ordinary." As a result, Plaintiff has not plausibly alleged any sufficiently concrete or particularized imminent future harm that would permit him to seek the requested prospective injunctive relief.

For all of these reasons, the Court lacks subject matter jurisdiction due to Plaintiff's failure to establish the existence of Article III standing and finds that Plaintiff's Complaint should be dismissed without prejudice. *See Katz v. Donna Karan Co., LLC*, 872 F.3d 114, 121 (2d Cir. 2017) (finding suit was properly dismissed for lack of subject-matter jurisdiction based on a finding that plaintiff had not established a concrete injury sufficient to maintain Article III standing, but indicating that a dismissal for lack of subject-matter jurisdiction "must be entered *without prejudice*") (emphasis in original). The Court declines to address the parties' arguments

pertaining to Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) based on the lack of subject matter jurisdiction.

**ACCORDINGLY,** it is

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 23) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED without prejudice** for lack of subject matter jurisdiction.

Dated: October 26, 2026
Syracuse, New York

Glenn T. Suddaby
U.S. District Judge